DANIEL L. DYSART, Judge.
[! Ryan Miner appeals his conviction by an Orleans Parish jury of second degree battery, challenging the sufficiency of the evidence used to convict him and arguing that his constitutional right to judicial review has been violated. For the reasons that follow, we affirm Mr. Miner’s conviction and sentence.
BACKGROUND
By bill of information dated October 1, 2013, defendant, Ryan Miner, was charged with battery with a dangerous weapon. The bill of information specified that the battery was committed with a “prison shank” and identifies the victim as A.J. Baker. Mr. Miner pled not guilty to the charge ■ and, after several continuances, was tried before a six-member jury on May 6, 2014. Mr. Miner was unanimously found guilty of the offense of second degree battery, a violation of La. R.S. 14:34.1. Following a denial of Mr. Miner’s motions for new trial and for post-verdict judgment of acquittal, the trial court sentenced Mr. Miner to serve five years at hard labor, with credit for time served, *134 which sentence was to run concurrently with any other sentences. The trial court also ordered Mr. Miner to pay court costs of $276.50. After the trial court denied Mr. Miner’s motion to reconsider sentence, Mr. Miner timely filed this appeal.
JaERRORS PATENT
Our review of the record revealed one patent error 'which we address first. The bill of information charges Mr. Miner with “battery with a dangerous weapon, to wit: a prison shank,” which is not a crime recognized by our law. It likewise states the date of the offense as August 2, 2013, when the record clearly indicates that the incident occurred on August 1, 2013. However, we hold that both of these discrepancies constitute harmless error.
As to the failure of the bill of information to properly charge Mr. Miner, we find no reversible error. We note that a defendant has a constitutional right to be advised of the charges against him,[1] and an indictment must apprise a defendant “of the essential facts constituting the offense charged ... [and] shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated.” La.C.Cr.P. art. 464. However, Article 464 further provides that “[e]rror in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.”
In State v. Phillips, 10-0582, (La.App. 4 Cir. 2/17/11), 61 So.3d 130, this Court considered whether a bill of information, defective in that it failed to cite the proper statute, warranted the reversal of a conviction. There, the defendant was charged with “theft of a wallet ... by use of force, intimidation, or by snatching.” Id., 10-0582, p. 10, 61 So.3d at 137. This specific crime was also one not recognized by Louisiana law. Rather, the defendant should have been charged with, and was convicted of, purse snatching, a violation of La. R.S. 14:65.1.[2] We held that, although the bill of information did not “track the exact language of a statute or cite the statute, it [gave] fair notice of the crime of which the defendant was charged and ultimately convicted” and “complie[d] with La.C.Cr.P. article 464 in that it did not mislead defendant to his prejudice.” Id. 10-0582, pp. 10-11, 61 So.3d at 137. See also, State v. Perkins, 12-0662, p. 3 (La.App. 4 Cir. 10/29/14), 155 So.3d 649, 651 (where a bill of information was “defective because it failed to charge a crime punishable by a valid statute ... there was no motion to quash the bill of information filed.”).
In the instant matter, we find that the bill of information sufficiently notified Mr. Miner of the crime for which he was charged and convicted. “Aggravated battery” is defined as “a battery committed with a dangerous weapon.” La. R.S. 14:34 A. The bill of information charged Mr. Miner with “battery with a dangerous weapon,” which is the very definition of “aggravated battery.” Mr. Miner was ultimately convicted of second degree battery, a responsive verdict to the charge of aggravated battery pursuant to La.C.Cr.Pr. art. 814 A(14). Accordingly, we find that Mr. Miner was not misled or prejudiced by this omission. We likewise note that Mr. *135 Miner did not file a bill of particulars or a motion to quash the bill of information,[3] which waives any such error in the bill of information. See, e.g., State v. Stukes, 08-1217, p. 11 (La.App. 4 Cir. 9/9/09), 19 So.3d 1233, 1241 (“the defendant’s failure to file a motion to quash ... waived any |⅜error from this omission.”); State v. Allen, 01-2494, p. 1 (La.6/21/02), 824 So.2d 344, 344 (per curiam) (“A defendant must raise a claim that the indictment does not provide adequate notice of the charge before trial by filing a bill of particulars. Failure to do so waives the claim.”).
Next, we find no reversible error in the inclusion of the incorrect date in the bill of information. Mr. Miner was not prejudiced by this error, and the date of the offense was not an essential element of the offense with which Mr. Miner was charged.
Under La.C.Cr.P. art. 468 “[t]he date or time of the commission of the offense need not be alleged in the indictment, unless the date or time is essential to the offense.” That article further provides that “[i]f the date or time is not essential to the offense, an indictment shall not be held insufficient if it does not state the proper date or time, or if it states the offense to have been committed on a day subsequent to the finding of the indictment....”
The precise date of the crime with which Mr. Miner was charged is inconsequential and accordingly, we find no reversal error in the bill of information’s citation of an incorrect date. See State v. Glover, 304 So.2d 348, 350 (La.1974) (because “the date is not essential to the offense of murder, the indictment is not insufficient when it states an incorrect date.”); State v. Butler, 34,658, p. 2 (La.App. 2 Cir. 11/16/00), 774 So.2d 315, 317 (“[t]he original bill of information was not invalid due to an incorrect date.”).
J^DISCUSSION

Sufficiency of the evidence

In his second assignment of error, Mr. Miner contends that the evidence presented at trial was insufficient .to support his conviction of second degree battery. Mr. Miner’s sufficiency of the evidence argument is two-fold. First, Mr. Miner contends that the prosecution failed to prove that he was the perpetrator of the offense. Second, he argues that the evidence did not establish that the victim suffered serious bodily injury.
We address Mr. Miner’s second assignment of error first, in accordance with the well-settled jurisprudence that “[w]hen issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.” State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Marcantel, 00-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55. In reviewing whether the evidence presented in a case is sufficient to support a conviction, we are governed by the standard set forth by the United States Supreme Court decision of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
As explained by this Court in State v. Huckabay, 00-1082, p. 32 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111 (quoting State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99), the applicable standard of review for sufficiency of the evidence claims is as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine *136 whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, at 1324 (La.1992).
Mr. Miner was convicted of second degree battery, which is defined as “a battery when the offender intentionally inflicts serious bodily injury.” La. R.S. 14:34.1 A. “[S]erious bodily injury” is defined as “bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.” La. R.S. 14:34.1 B(3).
The victim, A.J. Baker, was stabbed while he was in the “day room” of Orleans Parish Prison where he was incarcerated.[4] He testified at trial that, before the stabbing, he was approached by another inmate, Michael Randolph, with whom he had an argument that escalated to a fight. Shortly thereafter, Mr. Baker was stabbed in the head. Mr. Baker repeatedly testified that he did not know who stabbed him, indicating that he was angry at the time and was simply “putting it on |7anybody because somebody ... did [him] that for nothing.” Mr. Baker’s testimony, however, contradicted all other evidence adduced at trial.
Sergeant Stevie McGill, the Second Platoon Night Watch Commander assigned to the Orleans Parish Prison, was on duty on the day of the incident. He learned from a deputy assigned to the area that there had been an altercation, and he proceeded to that area. There, he found Mr. Baker bleeding from a laceration to his head. He interviewed Mr. Baker, who advised that during a verbal altercation with Mr. Randolph, he was stabbed in the back of his head. Mr. Baker then identified Mr. Miner as the person who stabbed him.
The Assistant Watch Commander on duty at the time of the stabbing was Deputy Kenneth Goodman. Deputy Goodman was present when Sergeant McGill interviewed Mr. Baker and confirmed that Mr. Baker identified Mr. Miner as his attacker.
Two videotaped interviews of Mr. Baker were shown to the jury at trial. The first of the interviews took place on the date of the incident- and the second took place the next day. In both of these interviews, Mr. Baker unequivocally identified Mr. Miner as his attacker. Mr. Baker also identified a photograph of Mr. Miner, indicating, *137 again, that Mr. Baker-was the person who stabbed him.
Based on the totality of the evidence presented at trial, we find that there was sufficient evidence from which the jury could have found Mr. Miner guilty beyond a reasonable doubt. While Mr. Baker testified at trial that he did not know who stabbed him, that testimony was directly contradicted by the numerous statements Mr. Baker made shortly after the incident and on the day after the incident, in which he positively identified Mr. Miner. Each of the three police officers who | Rinvestigated the incident, too, testified that he did not coerce Mr. Baker into making a statement or promise him anything in return for his statements. The jury, thus, had conflicting statements to consider and clearly chose to believe those statements made at the time of the attack.
It is well-settled that conflicting statements as to factual matters relate to the weight of the evidence, not its sufficiency. State v. James, 09-1188, p. 4 (La.App. 4 Cir. 2/24/10), 32 So.3d 993, 996, citing State v. Jones, 537 So.2d 1244, 1249 (La.App. 4 Cir.1989). It is equally well-settled that “[s]uch a determination rests solely with the trier of fact who may ac cept or reject, in whole or in part, the testimony of any witness” and that “[a] trier of fact’s determination as to the credibility of a witness is a question of fact entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence.” Id. We do not find the jury’s determination as to which of the statements to accept to be contrary to the evidence.
Nor are the prior statements made by Mr. Baker inadmissible hearsay. As the Louisiana Supreme Court explained in State v. Stokes, 01-2564, pp. 1-2 (La.9/20/02), 829 So.2d 1009, 1010:
A prior statement by a witness which is “[o]ne of identification of a person made after perceiving the person,” is non: hearsay when the witness appears and is cross-examined on the statement. La. C.E. art. 801(D)(1)(c). Such a statement may be used assertively, as substantive evidence of guilt, and may be established through the testimony of one to whom the statement was made. This is so even if the witness denies making an identification or fails or is unable to make an in-court identification. State v. Johnson, 99-3462, pp. 2-3, 774 So.2d 79, 80-81. The federal rule is similar. See Fed.R.Evid. 801(d)(1)(C); United States v. Brink, 39 F.3d 419 (3rd Cir.1994); United States v. Jarrad, 754 F.2d 1451 (9th Cir.1985). See also 5 Weinstein’s Federal Evidence, (MB) § 801.23[1], p. 80139 (2nd ed., Joseph M. McLaughlin, ed., 2002).
(Emphasis added).
Similarly, in State v. Johnson, 99-3462, pp. 2-3 (La.11/3/00), 774 So.2d 79, 80, the Supreme Court indicated that a prior identification could be used as evidence of guilt. The Court, quoting United States v. Brink, 39 F.3d 419, 426 (3rd Cir.1994) stated that “[i]f at trial the eyewitness fails to remember or denies that he made the identification, the previous statements of the eyewitness can be proved by the testimony of a person to whom the statement was made, and the statement can be given substantive effect.’” (quoting Jack B. Weinstein and Margaret A. Berger, Wein-stein’s Evidence, § 801(d)(1)(C) [01], at 801-222(1993)).
It is clear, therefore, that Mr. Baker’s statements identifying Mr. Miner after the stabbing were properly admitted into evidence at trial. Mr. Miner’s contentions that the evidence was legally insufficient to convict him and that the prosecution failed *138 to prove that he was Mr. Baker’s attacker are without merit.

Serious Bodily Injury

Second degree battery, pursuant to La. R.S. 14:34.1 A, requires a showing that a defendant “intentionally inflict[ed] serious bodily injury,” which is defined to include “unconsciousness, extreme physical pain or protracted and obvious disfigurement” and “a substantial risk of death.” La. R.S. 14:34.1 B. Mr. Miner contends that the prosecution failed to establish that the injury suffered by Mr. Baker was a “serious bodily injury” as contemplated by this statute. He argues that, first, there was no medical testimony presented at trial about the nature of the injury; second, that the fact that there was a substantial amount of blood involved is immaterial; and third that Mr. Baker did not testify that he suffered an extreme |10amount of pain even though he indicated that he has suffered from migraine headaches since the incident. Mr. Miner relies on State v. Helou, 02-2302, p. 6 (La.10/23/03), 857 So.2d 1024, 1028, where the Louisiana Supreme Court noted that “the presence of blood alone does not satisfy the ‘serious bodily injury’ element of second degree battery.” After surveying cases involving the issue of what constitutes “serious bodily injury,” the Helou Court found that “a punch in the nose, without more evidence, is sufficient to support a conviction of second degree battery.” Id., 02-2302, p. 8, 857 So.2d at 1029. In this regard, the Court noted that there was no evidence of severe injury, the victim initially declined medical treatment, but was ultimately seen for a brief visit at the emergency room and that the State “failed to prove beyond a reasonable doubt that the victim, in fact, suffered ‘extreme physical pain’ as required by the statute.” Id.
In its survey of cases involving “serious bodily injury,” the Helou Court noted the following:
Our jurisprudence demonstrates many cases where the State proved the “serious bodily injury” element of second degree battery. Some examples are: 1) State v. Abercrumbia, 412 So.2d 1027 (La.1982), where the defendant hit the victim with boards across his head, neck, and arm, causing a “deep cut over his right eye;” 2) State v. Robertson, 98-0883 (La.App. 3d Cir.12/9/98), 723 So.2d 500, writ denied, 99-0658 (La.6/25/99), 745 So.2d 1187, where the defendant knocked the victim to the ground and repeatedly kicked and hit her until she “kind of lost her senses for a minute;” the victim had bruises and contusions over the entire extent of her body, which left significant scars and lacerations on her nose; and 3) State v. Robinson, 549 So.2d 1282, 1285 (La.App. 3d Cir.1989), where the defendant stabbed the victim twice with a large, folding knife.
Id., 02-2302, pp. 6-7, 857 So.2d at 1028.
|nIn the instant matter, we find that the injury suffered by Mr. Baker certainly falls within the meaning of “severe bodily injury,” as was found in Abercrumbia, Robertson and Robinson. While no medical testimony was adduced at trial, Mr. Baker testified that he was struck in the head, sustaining a laceration so severe that it required twenty-one staples and an overnight hospital stay. The jury also saw Mr. Baker in the videotapes with a bandage encircling his head. Clearly, a jury could reasonably infer that the injury caused “extreme physical pain” and resulted in a permanent scar on Mr. Baker’s head.
Likewise, Mr. Baker testified at trial that, after he was “stabbed in the back of [his] head,” he “went out.” He also indicated in his August 1, 2013 interview that he felt “someone hit [him] from behind, *139 boom, and, like, knocked [him] out.” He then reiterated that he was “knocked out.” While it does not appear that Mr. Baker was “knocked out” for any extendéd period of time, a jury could reasonably infer that Mr. Baker was rendered “unconscious” within the meaning of La. R.S. 14:34.1.
This assignment of error is without merit.

Missing videotapes

In his first assignment of error, Mr. Miner argues that his “constitutional right to judicial review based upon a complete record of all evidence has been violated due to the fact that trial exhibit S-l (a disk containing the videotaped statements of both defendant and the victim), is missing. While the exhibit had. not been located at the time of the lodging of this appeal, it has since been found; and accordingly, this assignment of error is moot.
|12A review of the record indicates that, after this matter was lodged, this Court ordered that the district attorney’s office either file the exhibit with the Court or issue a certificate of its unavailability. On November 5, 2014, the State filed its notice of compliance with that order and submitted the exhibit to this Court. By letter dated December 1,. 2014, counsel for Mr. Miner advised that there would be no supplemental brief filed on his behalf based on these videotapes. Accordingly, the issue of the missing tapes is now moot.
CONCLUSION
For the reasons stated herein, we affirm Ryan Miner’s conviction and sentence.
AFFIRMED.

. See La. Const. art. I § 13 ("When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention_”).

. “Purse snatching is the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon.” La. R.S. 14:65.1 A.

. A bill of particulars requires the prosecution to set forth “more specifically the nature and cause of the charge against the defendant.” La.C.Cr.P. art. 484

. The record does not indicate the nature of the convictions for which Mr. Baker and-Mr: Miner were imprisoned at Orleans Parish Prison. Their prior conviction history is not relevant to this matter.